UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MARLON GREEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No. 12 C 5377 |
| v. | ) |
| | ) Hon. James B. Zagel |
| **SHERIFF THOMAS DART, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Marlon Green, a pretrial detainee at Cook County Jail, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, Cook County Sheriff Thomas Dart and Superintendent Thomas, impaired his ability to practice his religion and violated his right to equal protection because he is unable to attend religious services with a Baptist minister while housed in Division Nine. Defendants have moved for summary judgment and to strike Plaintiff's response to their statement of material facts. For the reasons stated below, Defendants' motion for summary judgment is granted and the motion to strike is denied.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor." *Anderson*, 477 U.S. at 255. The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Lorillard Tobacco Co., Inc. v. A & E Oil, Inc.*, 503 F.3d 588, 594–595 (7th Cir. 2007), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## LOCAL RULE 56.1 (N.D. ILL.)

Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Defendants provided Plaintiff a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have . .

. repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, Plaintiff failed to file a proper response to Defendants' statement of material facts. Plaintiff filed a response to the Defendants' statement of material facts in which he "disagrees" or "responds" to fourteen of the thirty-two statements of material fact. Plaintiff supports his disagreement with reference to a supporting exhibit or affidavit for only four of his fourteen responses (statement nos. 9, 22, 29, 32). Thus, the remaining proposed statements of material fact are deemed admitted.

However, because Plaintiff is proceeding *pro se*, the Court will grant him some leeway and consider the factual assertions he makes in his summary judgment materials. The Court will entertain Plaintiff's factual statements only to the extent that he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. Based on the above, Defendants' motion to strike is denied.

## **FACTS**

Plaintiff has been a pretrial detainee at the Cook County Jail since April 18, 2011. (Defs.' 56.1(a)(3) Statement ¶ 1.) Plaintiff has always been housed in Division 9. (*Id.*) Division 9 is a super maximum security division. (*Id.*, ¶ 6.) Division 9 houses a number of different detainees that require the highest security in Cook County Jail, including disciplinary segregation, protective custody, and special incarceration units. (*Id.*) All detainees in Division 9 are charged with serious crimes. (*Id.*) There is also a non-affiliated deck for those prisoners who are not affiliated with a gang and an "old man deck" for older detainees. (*Id.*) Division 9 has gangs, including rival gangs.

4

(*Id.*, ¶ 8.)  Plaintiff is aware of fights between gangs, as well as for non-gang related reasons. (*Id.*) Fights occur when inmates are out of their cells and being transported from area to area. (*Id.*) Plaintiff is classified as a super maximum security detainee in Division 9 because he is charged with murder, he was twenty years old at the time of classification, and he is affiliated with a violent street gang. (*Id.*, ¶ 7.)

Plaintiff indicated he is a Baptist when he entered Cook County Jail. (Defs.' 56.1(a)(3) Statement ¶ 5.) Plaintiff believes that there is a chapel in Division 9 because someone told him that they used to hold church services in the chapel. (*Id.*, ¶ 9.) There is a group of detainees on Plaintiff's tier, including Plaintiff, that meet for bible study and prayer every Monday, Wednesday, and Friday. (*Id.*, ¶10.) A fellow detainee acts as a minister and is the spiritual leader for the six detainees who attend the bible study. (*Id.*, ¶ 11.)

Plaintiff is not aware of any policy that prohibits a Baptist minister from coming to Cook County Jail. (Defs.' 56.1(a)(3) Statement ¶ 12.) Plaintiff is not aware of any minister, including a Baptist minister, that has tried to come into Division 9 not being allowed to do so. (*Id.*) Plaintiff does not know the names of any Baptist ministers and has never tried to contact any Baptist ministers. (*Id.*, ¶ 13.)

Plaintiff practices his faith with his Bible, which he is allowed to keep with him at all times; through the Daily Bread, a publication which contains passages for reflection and spiritual guidance; and through the bible study group that meets three times a week. (Defs.' 56.1(a)(3) Statement ¶ 14.) Plaintiff would attend a Christian service if one was provided, but he would not attend a Catholic service because he does not believe that a Catholic service is a Christian service. (*Id.*, ¶ 17.)

From June 2011, through the present, the only reason that a Baptist volunteer would not be

5

able to meet with detainees or hold a service would be when there was a divisional lockdown and/or a staff shortage. (Defs.' 56.1(a)(3) Statement ¶ 18.) A divisional lockdown is a security measure in which all unnecessary movement within the division is terminated for the purpose of conducting a thorough search of the entire facility to locate and identify any possible security breaches, along with a search for any illegal contraband in order to suppress the presence of weapons and illegal substances within the facility. (*Id.*, ¶ 19.) Lockdowns also serve as a deterrent and a means of maintaining security after fights break out within a division. (*Id.*) Activities such as linen exchanges, recreation, and religious services that require the movement of detainees within the division are cancelled and rescheduled during a lockdown for security and operational reasons. (*Id.*, ¶ 20.) Plaintiff's tier often is on lockdown due to fights. (*Id.*, ¶ 28.) In the first fifteen months of Plaintiff's detention in Division 9, the tier was on lockdown approximately three times a month, with each lockdown lasting at least a few days. (*Id.*) When a division is short-staffed, unnecessary detainee movements are cancelled for security reasons. (*Id.*, ¶ 21.)

Religious services held away from detainee tiers require maximum staff because they involve escorting detainees from their tier to a different location in the jail, they involve the inter-mixing of detainees from different tiers whose personal histories and affiliations may be unknown, and they require special attention to the security of the civilian volunteer providing the service. (Defs.' 56.1(a)(3) Statement ¶ 22.)

Baptist instruction and guidance is performed by volunteers from the Baptist community. (Defs.' 56.1(a)(3) Statement ¶ 23.) The volunteers are not employees of the Cook County Sheriff's Officer of the Cook County Department of Corrections. (*Id.*) The volunteers must be screened to ensure the safety of inmates and staff and only screened volunteers are allowed to enter the jail. (*Id.*)

While the jail cannot compel a Baptist minister to visit with detainees, the jail staff will not impede a minister who is otherwise in compliance with the security regulations, from meeting with a detainee or from holding a religious service. (*Id.*, ¶ 25.)

Plaintiff has access to religious request slips on his tier and can use the request slip to request a minister visit him should one come to his area. (Defs.' 56.1(a)(3) Statement ¶ 29.) Plaintiff has completed request slips for a Baptist minister but none have come to visit him. (*Id.*) Plaintiff completed a grievance regarding not being able to attend services in a chapel. (*Id.*, ¶ 32.) The response to the grievance informed Plaintiff that, due to his security classification, detainees in his area would be visited by ministers on their tiers. (*Id.*)

Plaintiff has never spoken with Sheriff Dart and Sheriff Dart has never personally kept Plaintiff from attending any chapel service. (Defs.' 56.1(a)(3) Statement ¶ 26.) Superintendent Thomas never physically prevented Plaintiff from attending chapel services. (Defs.' 56.1(a)(3) Statement ¶ 27.) Superintendent Thomas is not aware of any request made by Plaintiff for a Baptist service in Division 9. (*Id.*)

## ANALYSIS

Plaintiff argues that his religious freedoms are being impaired because he is not able to meet with a Baptist leader and he is unable to attend religious services in a chapel.

A detainee's right to practice his religion is protected under both the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) (RLUIPA). A detainee's right to exercise his religion under the First Amendment is "subject to limits appropriate to the nature of prison life." *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). Restrictions on a detainee's exercise of his religion are permitted as long as the restrictions are

7

reasonably to legitimate penological objectives. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Legitimate penologoical interests include safety, security, and economic concerns. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). Furthermore, because the issues in prisons are "complex and intricatable, and because courts are particularly ill equipped to deal with these problems," courts generally defer to the prison officials' judgments on these issues. *Shaw v. Murphy*, 532 U.S. 223, 239 (2001). The First Amendment does not require that a detainee be afforded his preferred method of practicing his religion, and if other means are available for his religious practice, courts are to be particularly conscious of the measure of judicial deference owed to the correctional officers. *Turner*, 482 U.S. at 90. The alternatives provided "need not be ideal . . . they need only be available." *Overton v. Bazetta*, 539 U.S. 126, 135 (2003).

The court considers four factors in determining whether a restriction on a detainee's religious practice is constitutional: (1) whether the restriction is rationally related to a legitimate and neutral government objective, (2) whether alternative means exist for the detainee to practice his religion, (3) the impact an accommodation of the asserted right would have on guards and other inmates, and (4) whether there are obvious alternatives to the restrictions that show that the restrictions are an exaggerated response to the prison concern. *Turner*, 482 U.S. 89-91.

First, the jail has not prohibited Plaintiff from receiving services from a Baptist leader; a Baptist leader has not responded to Plaintiff's request slip for such services and Defendants cannot compel a Baptist leader to visit Plaintiff on his tier.

In addition, the jail's policy of not providing religious services to Plaintiff in a chapel is rationally related to the legitimate interest of security. As discussed above, in light of Plaintiff's classification, including being charged with murder and his affiliation with a violent street gang, he

8

(as well as the other detainees on his tier with the same classification) cannot attend services in a chapel because of the security concerns. The security issues associated with religious services held away from the detainees' tier include: (1) they require maximum staff because they involve escorting detainees from their tier to a different location in the jail, (2) they involve the inter-mixing of detainees from different tiers whose personal histories and affiliations may be unknown, and (3) they require special attention to the security of the civilian volunteer providing the service. The undisputed facts establish that the restriction placed on Plaintiff is rationally related to the legitimate and neutral government objective of safety of both the detainees and jail staff.

Second, the undisputed facts demonstrate that alternative means exist for Plaintiff to practice his Baptist faith. Plaintiff attends a bible study three times a week, he is able to pray within his cell with access to his bible at all times, he receives a religious publication, he is not prohibited from receiving religious instruction on his tier from a Baptist leader if one visited the tier, and he is able to speak with other religious leaders that do visit his tier. *See Williams v. Dart*, No. 10 C 2499, 2011 WL 4808167, at * 4 (N.D. Ill. Oct. 11, 2011) (Feinerman, J.) (finding that a detainee who was prohibited from chapel services had alternative to means to practice his religion because he had access to the Koran and the Bible in his cell and he was able to study and pray in his cell at all times); *Grant v. DeTella*, No. 96 C 2727, 1999 WL 966988, at *4 (N.D. Ill. Oct. 6, 1999) (Pallmeyer, J.) (finding prayer in cell is a legitimate alternative to communal worship).

Third, accommodating Plaintiff's desire for services in the chapel would have a significant adverse impact on jail administration. Plaintiff is classified as super maximum security based on the serious charges brought against him as well as his affiliation with violent street gang. Plaintiff

9

concedes that fights break out on the tier while detainees are outside their cell and while being transported to different areas in the jail. Limiting Plaintiff's movement in jail common areas and thoroughfares helps ensure jail security as well as Plaintiff's security. Services held in a chapel would require additional staff being assigned to transport the detainees both to and from the chapel in addition to monitoring the detainees in the chapel while the service was being held. The additional staff requirements would have a significant adverse impact on jail administration. *See McRoy v. Cook County Dep't of Corr.*, 366 F. Supp. 2d 662, 678-79 (N.D. Ill 2005), *aff'd* 205 Fed. Appx. 462 (7th Cir. 2006) (jail staff requirements during chapel service would have a adverse effect on jail administration).

Lastly, as to the *Turner* factors, Plaintiff has not identified any obvious alternatives to the restrictions that show that the restrictions placed on him are an exaggerated response to the jail administrator's security concerns. Plaintiff has the burden "to point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 91. Plaintiff relies on an affidavit by another young detainee who is charged with murder who has been allowed to go a chapel service as evidence that it is possible for detainees to safely attend service in a chapel. However, that detainee does not have the same classification as Plaintiff because he not affiliated with a violent street gang. Thus, evidence that some detainees are allowed to go to chapel does not demonstrate an alternative that shows the restrictions placed on Plaintiff is an exaggerated response to the security concerns with allowing detainees with Plaintiff's classification to attend chapel services.

Based on the above, the Defendants are entitled to summary judgment on Plaintiff's claim that his Free Exercise rights were violated.

Plaintiff did not specifically plead a claim under RLUIPA and he did not respond to Defendants' argument that Plaintiff failed to establish an RLUIPA claim. However, the Court will address Plaintiff's claim under RLUIPA as he need not plead such a claim with specificity. *See Ortiz v. Downey*, 561 F.3d 664, 670 (7th Cir. 2009).

RLUIPA provides, in pertinent part, that the government cannot impose "a substantial burden" on a detainees religious exercise unless the government demonstrates that the imposition is (1) "in furtherance of a compelling government interest," and (2) "the least restrictive means of furthering that compelling government interest. 42 U.S.C. § 2000cc-1(a). The detainee bears the burden of establishing that the challenged actions of the prison officials substantially burdens his religious practice. *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). If the detainee carries his burden, the prison officials must demonstrate that the restrictions are the least restrictive means of pursuing a compelling government interest. *Koger*, 523 F.3d at 796.

An action constitutes a "substantial burden" if it renders the detainee's religious exercise "effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). At the summary judgment stage, the detainee must submit evidence that demonstrates that the burden imposed on his religious practice was substantial, a detainee's "unreasoned say-so" is not sufficient to defeat summary judgment. *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006).

While Plaintiff alleges that he would like to obtain religious instruction from a Baptist minister and that he would like obtain such instruction in the chapel, he has failed to demonstrate that the practice of his religion is rendered effectively impracticable by not being allowed such services. More importantly, as to receiving instruction from a Baptist minister, the prison officials

11

have not stopped Plaintiff from receiving such instruction. Instead, a Baptist leader has simply not responded to Plaintiff's request for visitation.

Nor has Plaintiff demonstrated (or even alleged) that not being allowed religious instruction in a chapel renders the practice of his religion effectively impracticable. *See Williams v. Dart*, No. 10 C 2499, 2011 WL 4808167, at * 4 (N.D. Ill. Oct. 11, 2011) (Feinerman, J.) (granting summary judgment in Defendants' favor because Plaintiff failed to demonstrate that communal services was an essential practice of his faith).

Furthermore, the undisputed facts also demonstrate that Plaintiff is able to practice his religion through other means, including a bible study three times a week, his ability to pray within his cell with access to his bible at all times, receipt of a religious publication, and his ability to speak with other religious leaders that do visit tier. *See LaPointe v. Walker*, Case No. 06-952-DGW, 2010 WL 3724274, at *7 (S.D. Ill September 15, 2010) (Wilkerson, J.) (finding that the alternatives provided to Plaintiff to practice his religion demonstrated that other restrictions did not substantially burden prisoner's ability to practice his religion).

Having failed to demonstrate that the restrictions placed on Plaintiff at Cook County Jail substantially burden his practice of religion, Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim.

Lastly, Plaintiff argues that his right to equal protection is violated because the Defendants allow other detainees with different classifications to attend chapel services. To establish a claim under the Equal Protection Clause, a plaintiff must demonstrate that: (1) he is otherwise similarly situated to members of the unprotected class, (2) he was treated differently from members of the

unprotected class, and (3) the defendants acted with discriminatory intent. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). In addition, a plaintiff can establish a "class-of-one" equal protection claim by demonstrating that he has been intentionally treated differently from others that are similarly situated and there is no rational basis for the different treatment. *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff argues that the Defendants favor one "class" of detainees over his "class" of detainees by allowing some classifications of detainees to attend chapel but not those in his classification. However, Plaintiff does not identify any other detainee with his same classification that was allowed to attend chapel services. Instead, he relies on another young detainee who is also charged with murder being able to attend chapel services. As already pointed out, that detainee does not have the same classification as Plaintiff because he is not affiliated with a violent street gang. In a prison setting, the Equal Protection Clause of the Fourteenth Amendment requires the inmates be treated equally unless unequal treatment bears a rational relation to a legitimate penal interest." *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). As discussed above, the unequal treatment of Plaintiff and those with the same classification – not being allowed chapel services – is rationally related to the legitimate penological interest of safety within the jail. Thus, Defendants are entitled to summary judgment on his claim pertaining to his inability to attend chapel services.

Furthermore, as to any possible "class-of-one" claim based on the lack of a Baptist minister visiting Plaintiff on his tier, Plaintiff has not be prevented by Defendants from receiving instruction form a Baptist minister on his tier. Instead, a Baptist minister has not visited the tier and if one seeks to do so, he would not be impeded in doing so. Thus, Defendants are also entitled to summary

13

judgment on any "class-of-one" equal protection claim.

In conclusion, no reasonable jury could find that the Plaintiff's inability to visit with a Baptist minister on his tier nor his inability to attend chapel services constituted a violation of his right to exercise his religion or his right to equal protection.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment [16] is granted. Defendants' motion to strike [30] is denied. The Clerk is directed to enter judgment in favor of the Defendants pursuant to Fed. R. Civ. P. 56. The case is terminated.

Dated: 7/23/2013

_____
James B. Zagel
United States District Judge